SPRAY REFRIGERATION COMPANY, Inc., a California corporation, Appellant,

v.

SEA SPRAY FISHING, INC., a California corporation, Appellee.

SPRAY REFRIGERATION COMPANY, Inc., a California corporation, Appellant

v.

VAGABOND FISHING, INC., a California corporation, Appellee.

SPRAY REFRIGERATION COMPANY, Inc., a California corporation, Appellant,

v.

COURAGEOUS FISHING CORP., Inc., a California corporation, Appellee.

Nos. 17912–17914.

United States Court of Appeals Ninth Circuit.

July 26, 1963.

Flehr & Swain and John Swain, San Francisco, Cal., for appellant.

Fulwider, Patton, Rieber, Lee & Utecht, Francis A. Utecht, J. F. McLellan, Long Beach, Cal., for appellees.

Before HAMLEY, KOELSCH and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

Three patent infringement suits, consolidated for disposition in the district court and here, are before us on the appeals of plaintiff in each case, Spray Refrigeration Company, Inc. The defendants and appellees, one in each suit, are Sea Spray Fishing, Inc., Vagabond Fishing, Inc., and Courageous Fishing Corp., Inc. The patent which was assertedly infringed, owned by appellant, is United

States Letters Patent No. 2,909,040 entitled "Apparatus and Method for Freezing Fish," issued to Malcolm L. Newell on October 20, 1959.

Injunctive and monetary relief for infringement was sought against each appellee. Each appellee denied infringement and challenged the validity of the patent. Prior to trial, however, all of the appellees advised the court that they would not contest the validity of the patent.[1] Accordingly, at the trial appellees presented no evidence and made no argument relative to that question. The trial court made no finding or conclusion on the question of validity but, as to each appellee, found and concluded that appellant had failed to sustain its burden of proving that the patent had been infringed. A judgment was therefore entered for each appellee.

Appellant contends on appeal, in effect, that the trial court erred in finding and concluding that appellant had failed to sustain its burden of proof on the question of infringement, and in failing to find and conclude that the patent is valid.

We turn first to the question of infringement. The patent claims a method for freezing fish on board commercial fishing vessels while the vessels are at sea. The purpose of the patented method is to provide a means whereby large catches of fish may be quickly frozen, thereby avoiding waste and spoilage associated with commercial fishing, primarily for tuna, in warm waters.

The steps of the method are (1) to provide a closed refrigeration system in a fish receiving zone or hatch and (2) to circulate brine in a spray system over the coils of the refrigeration system, where-

by a reserve layer of ice is built upon the coils. This reserve layer, or reserve capacity, according to the inventor, promotes the initial cooling of the fish and cools subsequently sprayed brine to promote further, and complete, freezing of the catch.

Appellant claimed that, as to some voyages, each of the appellees built a reserve capacity of ice upon the refrigerating coils of its respective fishing vessel,[2] prior to the time fish were caught, so that when a large quantity of freshly caught fish were deposited in the hatch or hold, the brine which was sprayed over them chilled them quickly. This large reserve capacity of ice, it was claimed, gave appellees a large capacity of "cold" upon which they drew to effect the rapid removal of heat from the fish. The described practice followed by each appellee, appellant asserted, constituted infringements of the method patent described above.

Appellees concede that the freezing apparatus installed in each of their vessels could be operated in a manner that would infringe the patent in suit, i. e., to build up a reserve layer of ice on the coils. On the other hand, Malcolm Lloyd Newell, the inventor of the patent, testifying for appellant, stated that the apparatus installed on each of the accused vessels could be operated in such a manner as not to infringe the patent.

With regard to infringement on the Sea Spray and Courageous, the evidence was in dispute as to whether the freezing apparatus had been employed in a manner which infringed the patent. We are therefore unable to say that the trial court erred in finding and concluding that, as to those vessels, appellant did not

1. In appellant's memorandum filed prior to trial, it was asserted that the appellees had admitted the validity of the patent. In appellees' memorandum prior to trial, however, the statement of their position with respect to the validity of the patent was not cast in terms of an admission. They there said:

"Defendants do not contest the validity of the patent in suit as defendants have no knowledge as to whether or not

the patent is valid or invalid. So far as defendants are concerned, the validity or invalidity of the patent in suit is of no importance since the alleged invention thereof is completely useless. The defendants would not use the alleged invention even if they were granted a free license for such use."

2. The Sea Spray, Vagabond and Courageous.

sustain its burden of proof on the question of infringement.

With regard to infringement on the Vagabond, appellee Vagabond Fishing, Inc., stipulated that the freezing method claimed in the patent was used on one or two trips made in 1961. Jack Kordich, who was engineer on the Vagabond from August, 1960 to November, 1961, testified that this freezing method was used on two trips he was on in 1960. Kordich further testified, however, that this method of freezing was used on these two trips only for the purpose of experimentation as to the desirability of using this method. As a result of the experiment, Kordich testified, he reached the conclusion that it was not necessary to use the patented method in order to get satisfactory freezing on the Vagabond.

Appellee Vagabond Fishing, Inc. argues that this indicated use of the patented method is *de minimis* and for that reason should not be regarded as an infringement. This view is predicated not only on the assertedly experimental nature of the use the Vagabond made of the method, and the limited amount of such use, but also on the contention that Newell, the inventor, had suggested that the experiment be conducted. In this latter connection, appellee refers to certain testimony given by John Stanovich, who was captain of the Vagabond at the time in question, and by Newell, which testimony we quote in the margin.[3]

Giving full credence to this testimony we do not regard it as establishing that Newell authorized the operators of the Vagabond to utilize the patented freezing method for experimental or any other purposes during commercial fishing operations, without the necessity of first obtaining a license from the patent owner.[4] It is to be noted that the trial court made no finding that the patented method was used experimentally on the Vagabond, or that the operators of the Vagabond had been authorized to use that method experimentally. The court held only that appellant had failed to sustain the burden of proof as to infringement.

In support of their view that experimental use of a patent does not constitute infringement, appellees cite Chesterfield v. United States, 159 F.Supp. 371, 141 Ct. Cl. 838, and Dugan v. Lear Avia, Inc., D.C.S.D.N.Y., 55 F.Supp. 223, aff. on other grounds, 2 Cir., 156 F.2d 29. But in neither of those cases was the experimental use coupled with a commercial use. In Chesterfield, the court quoted with approval that part of the Dugan opinion in which Judge Rifkind pointed out that while the device there in question was built experimentally the alleged infringer "has neither manufactured it for sale nor sold any."

■ The method described in the claims of the patent here in question was used on one or two voyages of the Vagabond while that vessel was engaged in

---

3. Stanovich testified:
  "Q Prior to this first experimental work, had you heard of the Newell refrigerating system? A Yes. Q Who had advised you as to that system? A Well, I was—Mike had, and this happened—— Q By Mike, you mean whom? A Mike Newell, Mr. Newell. At that time I was working on the WESTERN MONARCH. That was my first experience with a spray system. Q And Mr. Newell had told you that it was desirable to build up ice on the refrigerating coils? A Yes. He told me it was a good practice to build up ice, and the skipper that was running the boat, I was on the wheel for him, and we both talked it over and thought it was a very good way of doing it at that time. Q After your first trial of the building up of reserve ice on the coils of the VAGABOND, did you continue to build up ice on subsequent trips? A No."
Newell testified:
  "Q Mr. Newell, have you ever advised other boat owners or engineers how to practice your patented system? A Yes, sir. Q In fact, you are quite proud of the system? A Certainly, sir. Q Did you advise any of the defendants or their employees how to practice your patented system? A I did, * * *."

4. This being the case we need not inquire whether Newell then had authority to grant non-licensed use of the patented method, which is now owned by Spray Refrigeration Company, Inc.

commercial fishing operations of the kind which the patent was designed to serve. Granting that the operators used the method experimentally it was nevertheless, under these circumstances, an infringement of the patent claims, and this without regard to whether the patented method proved to be practicable, and preferable over other methods.

We therefore hold that the trial court erred in finding and concluding, on the undisputed facts recited above, that appellant had failed to sustain its burden of proving infringement on the part of appellee Vagabond Fishing, Inc. As to this appellee the judgment must be reversed and the cause remanded for the assessment of damages.

There remains to be considered the question of whether the trial court erred in failing to find and conclude that the patent in question is valid.

In its complaints instituting the three suits, appellant did not seek a declaratory adjudication as to the validity of the patent. It sought only monetary and injunctive relief for asserted infringement. In their respective answers appellees sought declaratory adjudications that the patent is invalid. But, as before noted, appellees withdrew these prayers for relief prior to trial.

There was thus no actual controversy between the parties as to the validity of the patent, within the meaning of 28 U.S.C. § 2201, relating to declaratory judgments, unless it must be held that, having raised the question of validity in their answers, appellees could not, by withdrawing that challenge, affect the jurisdiction of the district court which attached when the answers were filed.

Sterling Aluminum Products, Inc. v. Bohn Aluminum & Brass Corp., 6 Cir., 298 F.2d 538, may indeed stand for the proposition that once the issue of validity is raised in the pleadings, it is appropriate to adjudicate that issue even though an effort is made to withdraw it prior to trial. But if it be assumed that, for this reason, the district court had jurisdiction to adjudicate the validity of the pat-

ent involved in this case, we in any event do not believe it was an abuse of discretion to decline to do so. Deprived of an adversary proceeding on the question of validity the district court could well conclude that it ought not to render judgment in this matter which is of interest to the public as well as the immediate parties.

The judgments in favor of Sea Spray Fishing, Inc. and Courageous Fishing Corp., Inc. are affirmed. The judgment in favor of Vagabond Fishing, Inc., is reversed and that cause, on appeal here in No. 17,913, is remanded to the district court for further proceedings consistent with this opinion.