STX, LLC, (formerly known as STX, Inc.) Plaintiff–Appellant,

v.

BRINE, INC., Defendant–Appellee,

and

Warrior Lacrosse, Inc., Defendant–Appellee.

No. 99–1341.

United States Court of Appeals, Federal Circuit.

April 13, 2000

David J. Cushing, Sughrue, Mion, Zinn, Macpeak, and Seas, PLLC, of Washington, DC, argued for plaintiff-appellant. With him on the brief were James Archibald, and Mitchell Y. Mirviss, Venable, Baetjer & Howard, LLP, of Baltimore, Maryland. Of counsel on the brief were Rudolf E. Hutz and Mary W. Bourke, of Connolly, Bove, Lodge & Hutz, of Wilmington, Delaware.

Ernie L. Brooks, Brooks & Kushman P.C., of Southfield, Michigan, argued for defendant-appellee, Warrior LaCrosse, Inc. With him on the brief were Mark A. Cantor and Frank A. Angileri.

Brian M. Dingman, Nields, Lemack & Dingman, of Westboro, Massachusetts, argued for defendant-appellee, Brine, Inc. With him on the brief were D. Christopher Ohly, Blank, Rome, Comisky & McCauley, LLP, of Baltimore, Maryland.

Before MAYER, Chief Judge, LOURIE and SCHALL, Circuit Judges.

MAYER, Chief Judge.

STX, Inc. appeals the judgment of the United States District Court for the District of Maryland, No. 97–CV–1578, holding on summary judgment that United States Patent No. 5,566,947 (" '947 patent") is invalid under 35 U.S.C. § 102(b). Because we agree with the district court that STX has not raised a genuine issue as to any material fact, and co-appellees are entitled to judgment as a matter of law, we affirm.

### Background

STX, a manufacturer of lacrosse equipment, is the owner of the '947 patent, entitled "Lacrosse Stick Having Open Sidewall Structure." The '947 patent consists of nine claims, and is directed to a head frame for a lacrosse stick to which netting is attached for catching and throwing the ball during play. Central to this appeal is Claim 1, the only independent claim of the patent, which recites the following:

1. A head for a lacrosse stick *which provides improved handling and playing characteristics* comprising a generally V-shaped frame constructed of a synthetic polymeric material defined by two sidewalls joined at a juncture and diverging therefrom, a traverse wall joining tile [sic] ends of said sidewalls opposite of said juncture, said frame being adapted to receive a web, and said sidewalls having openings therein, the area of said openings including string holes comprising in the range of from about 7% to 65% of the entire area of said sidewalls. [Emphasis added].

The patent issued on October 22, 1996, from an application filed on September 20, 1985.

In January 1997, STX filed a complaint against Brine, Inc. and Warrior Lacrosse, Inc. ("Warrior"), other manufacturers of lacrosse equipment, alleging that lacrosse sticks they made infringed the '947 patent. Both defendants responded that the '947 patent was invalid and unenforceable: Warrior on the ground that STX violated the on-sale bar of 35 U.S.C. § 102(b), and Brine on the additional ground that an alleged limitation in Claim 1 of the patent, highlighted above, was indefinite under 35 U.S.C. § 112, ¶ 2. Warrior and Brine moved for summary judgment. The motion was supported by documentary evidence, including a handwritten purchase order completed by an agent for STX, showing that STX commercially exploited its invention two days prior to the critical date, September 20, 1984. STX responded that Warrior and Brine had failed to prove a prior sale and that the allegedly barring activity was merely a request, common in the industry, for a product still under development.

The district court granted Warrior's motion for summary judgment of invalidity, concluding that not only had STX failed to show a genuine issue of material fact sug-

gesting the patented invention was not on-sale prior to the critical date, but that the defendants had shown by clear and convincing evidence that STX's product was on-sale and in the public domain prior to that date. The trial court also conditionally ruled that even if the preamble language in dispute was deemed to be a claim limitation, which the court thought it was not, the limitation would render the claim invalid for indefiniteness. All other claims, counterclaims, and crossclaims were dismissed. STX appeals.

## Discussion

■ To prove that the STX patent is invalid for violating the on-sale bar, "[f]irst, the product must be the subject of a commercial offer for sale," *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261, 48 USPQ2d 1641, 1647 (1998): Warrior "must demonstrate by clear and convincing evidence that there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art." *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1358, 52 USPQ2d 1294, 1296 (Fed.Cir.1999) (citations omitted); *see also Scaltech, Inc. v. Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1383, 51 USPQ2d 1055, 1058 (Fed.Cir.1999) ("The first determination in the § 102(b) analysis must be whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention."). "The ultimate determination that a product was placed on-sale under [35 U.S.C. § 102(b) (1994) ] is a question of law based on underlying facts." *See Ferag v. Quipp, Inc.*, 45 F.3d 1562, 1566, 33 USPQ2d 1512, 1514–15 (Fed.Cir.1995).

■ At the heart of the on-sale argument is a transaction between STX salesman Robert Griebe and Bart's Sporting Goods ("Bart's"), which according to the undisputed facts occurred on September 18, 1984, two days prior to the critical date. The record shows that by September 18, inventors at STX had received from its molder, Recto Molded Products, a shipment of the "first squeezes" of the Excalibur head, the commercial embodiment of the '947 patent. The same day, Griebe wrote a purchase order for 112 Excalibur lacrosse sticks, memorializing a sale to Bart's. One third of the order was scheduled for delivery on October 1, 1984, and the remaining two thirds on January 10, 1985. STX contends that the transaction was merely a request for a hoped-for, future product that was still under development.

■ The overriding concern of the on-sale bar is an inventor's attempt to commercialize his invention beyond the statutory term. *See Ferag*, 45 F.3d at 1567, 33 USPQ2d at 1515. Taken alone, the evidence of the September 18, 1984, sale is sufficient to satisfy the first prong of the Pfaff test. Moreover, viewed in the broader context of STX's activity following the approval of its open sidewall design by the United States Intercollegiate Lacrosse Association's Rules Committee in May 1984, up to and including its preparation for the Sporting Goods Manufacturer's Association trade show on September 24–26, 1984, STX's claim denying the commercial nature of the Bart's sale is implausible. The fact that delivery was set for dates after the critical date is irrelevant to the finding of a commercial offer to sell. *See Pfaff*, 525 U.S. at 67, 119 S.Ct. 304.

STX argues that there could not have been a sale of the invention because it did not know by September 18, 1984, the date of the Bart's transaction, whether the Excalibur head would have "improved playing and handling" characteristics while retaining the strength and durability exhibited by the prior solid sidewall design. That assumes that the preamble language STX added to Claim 1 of the '947 patent is a limitation on that claim.

But we have said that "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention, the preamble is not a claim limitation." *Rowe v. Dror*, 112 F.3d 473, 478, 42 USPQ2d 1550, 1553 (Fed.Cir.1997). Here, the trial court properly held that Claim 1, following the preamble phrase, "which provides improved playing and handling characteristics," was a self-contained description that could stand alone, with or without the preamble. In fact, the patent examiner's rejection of the claim for obviousness even after the preamble language was added, suggests that the phrase was not essential in distinguishing it over the prior art, and was not decisive in securing allowance of the claim during prosecution. We agree with the district court's conclusion that the preamble phrase is not a limitation, and therefore its holding that the first prong of *Pfaff*, requiring an offer to sell, is satisfied.

■ We now turn to the second prong of the *Pfaff* test: was the invention ready for patenting? To demonstrate an invention is ready for patenting, a party can prove either that the invention was reduced to practice before the critical date, or, "that prior to the critical date, the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff*, 525 U.S. at 67–68, 119 S.Ct. 304.

Both at the district court and on appeal, STX downplayed the degree to which its invention was developed at the time it made the commercial offer to sell. According to the undisputed record, prior to the Bart's sale, STX had sufficient grasp of its invention, even a model, to allow it to gain approval for its design from the United States Intercollegiate Lacrosse Association Rules Committee, and later produce the first squeezes that were the subject of the September 18, 1984 sale. The same first squeezes were used in the trade show later that month. Such evidence is suffi-

cient to establish that the invention was ready for patenting. *See Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d 1326, 1333–4, 49 USPQ2d 1001, 1007 (Fed.Cir. 1998). Furthermore, during discovery STX admitted that the Excalibur incorporates the invention claimed in the '947 patent and is a commercial embodiment of the '947 patent.

The fact that the first squeezes that formed the basis of the commercial offer to sell might not have exhibited the desired degree of "improved playing and handling" characteristics, including the desired strength and durability, is irrelevant, not least because the preamble to Claim 1 is not a limitation. In any event, any "fine tuning" the Excalibur heads may have required after the Bart's sale does not undermine the conclusion that the invention was ready for patenting. *See Weatherchem*, 163 F.3d at 1332–34, 49 USPQ2d at 1006–7. And none of the "material" changes STX alleges remained to be made at the time of the barring activity are reflected in either the claims or specification of the patent that eventually issued. STX's confidence that its invention was complete and operative is reflected in the fact that the Bart's sale was for a commercial quantity. *See id.* at 1334, 163 F.3d 1326, 49 USPQ2d at 1007. Subjective qualities inherent in a product, such as "improved playing and handling," cannot serve as an escape hatch to circumvent the on-sale bar.

*Conclusion*

Accordingly, the judgment of the United States District Court for the District of Maryland is affirmed.

*AFFIRMED*