**PERSISTENCE SOFTWARE, INC., Plaintiff,**

v.

**THE OBJECT PEOPLE INC., et al., Defendants.**

**No. C–99–5182 PJH.**

United States District Court, N.D. California.

Dec. 22, 2000.

L.J. Chris Martiniak, Nicholas van Aelstyn, Elizabeth H. Rader, Heller Ehrman White & McAuliffe, San Francisco, CA, for Plaintiff.

Michael J. Bettinger, Timothy P. Walker, Elaine Y. Chow, Preston Gates & Ellis LLP, San Francisco, CA, for Defendants.

## MEMORANDUM AND ORDER

HAMILTON, District Judge.

The motion of defendants The Object People, Inc. and The Object People (U.S.) Inc. (collectively referred to as "defendants" or "TOP") for summary judgment came on for hearing on December 13, 2000, before this court, the Honorable Phyllis J. Hamilton presiding. Defendants appeared by their counsel Michael J. Bettinger. Plaintiff Persistence Software, Inc. ("Persistence") appeared by its counsel L.J. Chris Martiniak. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS summary judgment for the reasons stated below.

## INTRODUCTION

The present case stems from alleged patent infringement. Persistence alleges that defendants infringed a number of its software patents. Specifically, Persistence alleges that defendants infringed *United States Patent No. 5,615,362* ("the '362 patent") and *United States Patent No. 5,706,-506* ("the '506 patent").[1] Both patents are entitled "Method and Apparatus for Managing Relational Data in an Object Cache." The '362 patent contains at least 11 claims, numbers 1–7 and 11 are at issue in the present litigation. The '506 patent contains at least 14 claims, numbers 1, 4, 6 and 12–14 are at issue in the present litigation.

The software at issue in the subject patents provides a method and an apparatus for accessing and managing information stored in relational databases while using object-oriented applications. Object-oriented applications, such as reservation programs for airlines, are software programs that use objects containing both data (e.g., a passenger's name) and the functional behavior to be performed by the application (e.g., seat booking). Prior to the developments contained in the subject inventions, users of object-oriented applications were not able to access data stored in relational databases and were not able to store the data used in the programs in relational databases.

## BACKGROUND

In the Spring of 1990, Brian Skinner, a computer programer working for Lighthouse Design ("Lighthouse"), designed a software program that provided a system which enabled users of object-oriented ap-

---

1. All issues regarding *United States Patent No. 5,499,371* which were in dispute at the time that Persistence filed its complaint have been resolved by the parties. Accordingly, said patent is not addressed herein.

plications to store and access the data used in said applications in relational databases. The software program was called "Exploder." Shortly thereafter, Skinner left Lighthouse. Lighthouse, however, retained the Exploder.

In early 1991, Nippon Steel Corporation ("Nippon") offered to make an investment in the Exploder. As a result, Jonathon Schwartz, Lighthouse's founder, Chris Keene, Derek Henninger, and Richard Jensen formed Persistence (initially named Fulcrum Innovations, Inc.) to "commercialize the Exploder prototype."

Shortly thereafter, Chris Keene contacted Skinner to help translate the program from the computer language Objective–C to C++; the latter is compatible with the Sun workstation. The translation was completed around November of 1991. While the Exploder software was now in C++, no design changes were made. Accordingly, the translated Exploder was the same as the original Exploder created by Skinner.

By January of 1992, Persistence developed both a user's manual and functional specifications for the Exploder prototype. By March of 1992, Persistence had changed the name of the software from the Exploder to Persistence. In addition, around this time, Persistence began marketing its software. In connection with its marketing efforts, Persistence attended the Object World Trade Show on July 21, 1992 and further advertised its software.

Persistence's marketing efforts paid off. By July 31, 1992, Persistence had entered into contracts with Du Pont and Anderson Consulting. Said contracts provided a license to Du Pont and Anderson, respectively, for the beta version of the Persistence software in exchange for $10,000. On August 17, 1992, Persistence shipped the beta versions to Du Pont and Anderson.

From August 17, 1992, until approximately March of 1993, Persistence continued to work on the software, fixing bugs brought to its attention by Du Pont and Anderson and adding enhancements to the software.

On August 3, 1993, Persistence filed the applications for the '362 and '506 patents. Henninger, Jensen, and Keene were the listed inventors of the software.

## DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56. Material facts are those that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* The court may not weigh the evidence, and is required to view the evidence in the light most favorable to the nonmoving party. *See id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. Regardless of whether plaintiff or defendant is the moving party, each party must "establish the existence of the

elements essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### B. Defendants' Motion for Summary Judgment

Defendants contend that the claims at issue in the subject patents are invalid and unenforceable. Specifically, they argue that the on-sale bar of 35 U.S.C. section 102(b) renders the patent claims at issue invalid. Defendants also argue that the public disclosure bar renders the patent claims at issue invalid. Finally, they argue that Persistence's omission of Skinner's contributions to the invention in its patent application renders the patents unenforceable with respect to the claims at issue in this litigation.

#### 1. General Legal Standards Relating to the Patent Act

##### a. Invalidity of a Patent

###### 1) The On–Sale Bar

Under the "on-sale bar" to patentability, a person is not entitled to a patent if "the invention was ... on sale in this country, more than one year prior to the date of the application for a patent ..." 35 U.S.C. § 102(b). "It is a condition upon an inventor's right to a patent that he shall not exploit his discovery competitively after it is ready for patenting; he must content himself with either secrecy, or legal monopoly." *Metallizing Engineering Co. v. Kenyon Bearing & Auto Parts Co.,* 153 F.2d 516, 520 (2nd Cir. 1946). A determination of whether a patent is invalid under the on-sale bar is a question of law based on underlying issues of fact. *See Weatherchem Corp. v. J.L. Clark, Inc.,* 163 F.3d 1326, 1332 (Fed.Cir. 1998). The standard for the application of the on-sale bar was recently articulated by the Supreme Court in *Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). A patent is invalid under the on-sale bar if two conditions

have occurred before the critical date. *See id.* at 67, 119 S.Ct. 304. First, the invention must be the subject of a commercial offer for sale, and second, the invention must be ready for patenting. *See id.* at 67–68, 119 S.Ct. 304.

###### a) Commercial Sale vs. Experimental Use

The first condition requires that a sale or offer for sale be made. *Pfaff,* 525 U.S. at 67, 119 S.Ct. 304; 35 U.S.C. § 102(b). A defendant attempting to prove that an invention was the subject of a commercial sale "must demonstrate by clear and convincing evidence that there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art." *STX, L.L.C., v. Brine, Inc.,* 211 F.3d 588, 590 (Fed.Cir.2000).

Notwithstanding, the use of an invention by the inventor himself, or of any other person under his direction, by way of experiment, and in order to bring the invention to perfection, has never been regarded as [a public] use. *City of Elizabeth v. American Nicholson Pavement Co.,* 97 U.S. 126, 134, 7 Otto 126, 24 L.Ed. 1000 (1877). This doctrine is based on the underlying policy of providing an inventor time to determine if the invention is suitable for its intended purpose, in effect, to reduce the invention to practice. *See id.* at 137, 7 Otto 126 (holding that "[i]t is sometimes said that an inventor acquires an undue advantage over the public by delaying to take out a patent ... but this cannot be said with justice when the delay is occasioned by a bona fide effort to bring his invention to perfection, or to ascertain whether it will answer the purpose intended."). If a use is experimental, it is not, as a matter of law, a public use within the meaning of section 102. *Lough v. Brunswick Corp.,* 86 F.3d 1113, 1120–1121 (Fed. Cir.1996).

Where an invention has been reduced to practice, however, it can no longer be deemed experimental. *Zacharin v. U.S.,* 213 F.3d 1366, 1369 (Fed.Cir.2000); *see also RCA Corp. v. Data General Corp.,* 887 F.2d 1056, 1061 (Fed.Cir.1989) (holding that "experimental use, which means perfecting or completing an invention to the point of determining that it will work for its intended purpose, ends with an actual reduction to practice").

#### b) Invention Ready to Patent

The second condition "may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff,* 525 U.S. at 67–68, 119 S.Ct. 304.

While it is true that reduction to practice ordinarily provides the best evidence that an invention is ready for patenting, it does not follow that proof of reduction to practice is necessary. *Pfaff,* 525 U.S. at 66, 119 S.Ct. 304. In fact, it is immaterial for the purposes of the on-sale bar that the invention at issue was "makeshift". *Linear Technology Corp. v. Micrel, Inc.,* 63 F.Supp.2d 1103, 1123 (N.D.Cal.1999). Similarly, the fine tuning of features not claimed in the patent after the critical date is insufficient to avoid the on-sale bar. *See Weatherchem,* 163 F.3d at 1334.

#### 2) Public Demonstration

In addition to the foregoing, section 102(b) also invalidates patents where the patented invention was in the public use more than one year prior to the patent application date. Public use is construed broadly, and includes a public demonstration of the invention by the inventor. *Harrington Manufacturing Co., Inc. v. Powell Manufacturing Co.,* 815 F.2d 1478, 1481 (Fed.Cir.1986).

#### a. Unenforceability of a Patent

As a separate matter, applicants for patents and their attorneys are required to prosecute patent applications in the U.S. Patent and Trademark Office ("PTO") with candor, honesty, and good faith. 37 C.F.R. § 1.56(a). Inequitable conduct includes affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information, coupled with an intent to deceive the PTO. *Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.,* 204 F.3d 1368, 1373 (Fed.Cir. 2000). The law is clear that proper identification of the inventor—or one who designed the claimed invention—is a material fact. *See generally Stark v. Advanced Magnetics, Inc.,* 119 F.3d 1551 (Fed.Cir. 1997).

#### 2. Analysis

#### a. Invalidity of Patents at Issue

#### 1) On–Sale Bar

#### a) Invention Ready for Patenting

From the very start of this litigation, Persistence's position has been that the inventions which are the subject of the present dispute were reduced to practice no later than January of 1992. Persistence first asserted this position in its Initial Supplemental Disclosure served on January 31, 2000, which stated that the software at issue in the subject patents was conceived between January and December of 1991 and was reduced to practice no later than January of 1992. *See* Local Rule 16–6(e) (stating that disclosures constitute evidence). Said dates are further confirmed by the declaration of Derek Henninger, the Vice President of Engineering at Persistence and one of the inventors of the subject patented software, in connection with a companion case to this litigation entitled *Persistence v. Secant Technologies, Inc.,* No. C–00–1488–PJH, which is also currently being litigated in this court, in his declaration, signed on March 10, 2000, Henninger declared that

"[t]he conception and reduction to practice date ranges in Persistence's Initial Disclosures of Asserted Claims are the best information Persistence can provide based on the documents in its possession and the memories of the engineers involved who are still at Persistence."

As stated above, reduction to practice provides the best evidence that an invention is ready for patenting. *Pfaff*, 525 U.S. at 66, 119 S.Ct. 304. Based on Persistence's admissions that the subject inventions were reduced to practice no later than January of 1992, it follows that the subject inventions were ready for patenting no later than January of 1992.

Notwithstanding the foregoing, on September 11, 2000, three weeks after defendants filed their motion for summary judgment based on Persistence's position that the inventions were reduced to practice on or before January of 1992 and almost a year into the present litigation, Persistence submitted a Second Supplemental Initial Disclosure which stated that claim 1 of the '362 patent was conceived no later than December of 1991 and reduced to practice on August 17, 1992, that claims 2–7 of the '362 patent were conceived no later than December of 1991 and reduced to practice on March 19, 1993, and that claim 11 of the '362 patent was conceived no later than January of 1991 and reduced to practice on August 17, 1992. In addition, said Second Supplemental Initial Disclosure stated that claims 1 and 4 of the '506 patent were conceived no later than December of 1991 and reduced to practice on March 19, 1993, that claim 6 of the '506 patent was conceived no later than January of 1991 and reduced to practice on March 19, 1993, and that claim 12 of the '506 patent was conceived and reduced to practice on March 19, 1993.

Further still on November 13, 2000, Persistence submitted a Third Supplemental Initial Disclosure which stated that claim 1 of the '362 patent was conceived no earlier than July 31, 1992 and no later than April 14, 1993 and was reduced to practice no earlier than August 3, 1992 and no later than April 14, 1993, that claims 2–7 and 11 of the '362 patent were conceived no earlier than January 5, 1993 and no later than February 19, 1993 and reduced to practice no earlier than January 5, 1993 and no later than February 19, 1993. In addition, said Third Supplemental Initial Disclosure stated that claims 1, 4, 6 and 12 of the '506 patent were conceived no earlier than January 5, 1993 and reduced to practice no later than February 19, 1993.

Defendants argue that Persistence's attempt to avoid summary judgment by changing the reduction to practice dates is a "sham."

A party cannot submit a declaration flatly contradicting its prior deposition or other sworn testimony in an attempt to "create" an issue of fact and avoid summary judgment. *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266–67 (9th Cir.1991); *see also Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 807, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). As the *Kennedy* court noted, if a party "could raise an issue if fact simply by submitting an affidavit contracting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." 952 F.2d at 266.

Notwithstanding, "[a] definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169–70 (citations omitted).

The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended. To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time

and with which words the witness ... was stating the truth. Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact.

*Id.* at 1170 (citations omitted).

In accordance with the foregoing, the Ninth Circuit requires the district court to make a factual determination that the contradiction is actually a "sham." *Kennedy,* 952 F.2d at 267. In other words, the district court must determine whether the nonmoving party submitted a declaration containing the contradicting testimony in an effort to "create" an issue of fact and avoid summary judgment. *Id.* at 266–67. In making this determination, the court is to consider whether the party who submitted the declaration contradicting its prior testimony presents a sufficient explanation for the contradiction. *See Cleveland v. Policy Management Systems Corp.,* 526 U.S. at 807, 119 S.Ct. 1597; *see also Leslie v. Grupo ICA,* 198 F.3d 1152, 1157–58 (9th Cir.1999).

Despite the fact that Persistence's Second and Third Initial Supplemental Disclosures completely contradict its First Initial Supplemental Disclosure and Henninger's March 10, 2000, declaration, Persistence fails to proffer any evidence explaining the reason for the contradiction. In fact, Derek Henninger completely ignores his prior admission that the subject inventions were reduced to practice in or before January of 1992 in his declaration submitted in opposition to the motion for summary judgment. While Persistence does mention in a footnote in its opposition brief that after serving its Initial Supplemental Disclosure, it found documents that led it to believe that there was a fundamental design flaw in the foreign keys and relationships that required redesign of the software in Au-

gust of 1992 and that the semantic IDs, an alleged key aspect of the inventions, were not added to the software until March of 1993, the court finds said explanation to be inadmissible and substantially incomplete. In particular, Persistence's explanation lacks any evidentiary support and does not identify which documents led to Persistence's discovery of the "new" dates, when such documents were found, and why such documents were not found earlier.

At the hearing for this matter, the court informed Persistence that it was "surprised" at its complete failure to explain the contradiction between its original contention that the inventions were reduced to practice on or before January of 1992 and its post-motion contention that the inventions were reduced to practice in March of 1993. In response, Persistence presented two documents that it allegedly did not discover until sometime in the summer of 2000 which led to its discovery of the "new" reduced to practice dates. These two documents related only to the addition of the semantic IDs to the software. Persistence did not present any documents relating to the discovery of the alleged August 1992 design flaw. One of these documents was a page from the Appendix of Persistence's User Manual V1.0 which stated in relevant part as follows:

### A.3.1. Planned [E]nhancements

The following list shows scheduled release dates.

Enhancements scheduled for release by 2/93

1. Semantic key support for existing tables

2. Referential integrity for existing tables.

Defendants were quick to point out, however, that this document was produced by Persistence in January of 2000 in connection with its Initial Supplemental Disclosure, as evidenced by its bates number. Persistence did not dispute this fact. In light of the fact that the document which

allegedly led to its discovery of the "new" reduced to practice dates was produced to defendants in January of 2000, the court finds the argument of Persistence's counsel that Persistence did not find this document until the summer of 2000 less than compelling. In any event, this explanation suffers from the same defect as the explanation proffered in the footnote in Persistence's opposition brief; it lacks any evidentiary support. Furthermore at the hearing, Persistence's counsel did not request that the court leave the record open so that he could submit, at a later time, evidence to support his explanation.[2]

In light of Persistence's failure to proffer any evidence explaining the reason for its post-motion maneuvering with regard to the dates that the subject inventions were reduced to practice, the court can only conclude that Persistence submitted its Second and Third Initial Supplemental Disclosures in order to "create" a triable issue of fact and avert summary judgment. Accordingly, the court disregards the "new" dates contained in Persistence's Second and Third Initial Supplemental Disclosures. As a result, Persistence is bound by its prior admissions that the inventions at issue were reduced to practice on or before January of 1992.

b) Commercial versus experimental use

■ In the present case, it is undisputed that the inventions were offered for sale to Du Pont and Anderson between April and July of 1992. Furthermore, where an invention has been reduced to practice, it can no longer be deemed experimental. *Zacharin*, 213 F.3d at 1369. Because the subject inventions were reduced to practice in January of 1992 and because the inventions were offered for sale to Du Pont and Anderson between April and July of

1992, the court finds the claims of the patents at issue in the present litigation to be invalid pursuant to the on-sale bar contained in 35 U.S.C. § 102(b).

b. Defendants' Remaining Arguments

Because the court finds the claims of the patents at issue in the present litigation to be invalid pursuant to the on-sale bar, the court need not address defendants' remaining arguments raising the public disclosure bar and Persistence's alleged inequitable conduct in connection with the patent application.

### CONCLUSION

In accordance with the foregoing, the court GRANTS defendants' motion for summary judgment of the invalidity of claims 1–7 and 11 of *United States Patent No. 5,615,362* and claims 1, 4, 6 and 12–14 *United States Patent No. 5,706,506.*

This order fully adjudicates the motion listed at number 75 on the clerk's docket for this case.

**IT IS SO ORDERED.**

---

**2.** At the hearing, Persistence also argued that the "real" problem was that defendants brought their motion for summary judgment too soon. The court finds this argument to be completely unconvincing. Defendants had a right to rely on Persistence's own admissions of the date that its inventions were reduced to

practice. In addition, this is not the case where a defendant brings a motion for summary judgment before the plaintiff has had an opportunity to obtain documents within the defendant's control. In this case, the documents at issue were in Persistence's control.