**ROBOTIC VISION SYSTEMS, INC., Plaintiff–Appellant,**

v.

**VIEW ENGINEERING, INC., and General Scanning, Inc., Defendants– Cross Appellants.**

**Nos. 00–1343, 00–1377.**

United States Court of Appeals, Federal Circuit.

DECIDED: May 7, 2001.

---

Alert J. Breneisen, Kenyon & Kenyon, of New York, New York, argued for plaintiff-appellant. With him on the brief was Robert F. Perry.

Ernie L. Brooks, Brooks & Kushman P.C., of Southfield, Michigan, argued for defendants-cross appellants. With him on the brief was Frank A. Angileri.

Before LOURIE, RADER, and BRYSON, Circuit Judges.

LOURIE, Circuit Judge.

Robotic Vision Systems, Inc. appeals from the decision of the United States District Court for the Central District of

California holding claim 1 of United States Patent 5,463,227 invalid under the on-sale provision of 35 U.S.C. § 102(b). *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, No. CV–95–7441, slip op. at 14 (C.D.Cal. Mar. 29, 2000) ("*Robotic III*"). View Engineering, Inc. and General Scanning, Inc. (collectively "View") cross-appeal, arguing that Robotic's failure to disclose the best mode of carrying out the invention provides an alternative ground for affirming the district court's judgment of invalidity. Because the district court did not err in holding the claim invalid on the ground of the on-sale bar, we affirm.

## BACKGROUND

This is an appeal from the district court's decision on remand, following our previous decision in *Robotic Vision Systems, Inc. v. View Engineering, Inc.*, 112 F.3d 1163, 42 USPQ2d 1619 (Fed.Cir.1997) ("*Robotic II*"). Familiarity with the facts as set forth in that opinion is presumed. However, for the purpose of deciding the issues raised in this appeal, we will briefly summarize the relevant facts.

Robotic is the assignee of the '227 patent, which discloses a method of scanning the leads on integrated circuit devices that are arranged in rows and columns on a multi-pocketed tray. Unlike prior art systems, which scanned all four sides of one device before moving on to the next device, the claimed method involves scanning across the entire tray, over the corresponding sides of the devices, either by row or by column. '227 patent, col. 1, l. 66 to col. 2, l. 4. According to the specification, this "full-tray scanning" or "column and row" method reduces the overall scanning time by minimizing the number of direction and speed changes that are required. *Id.* at col. 2, ll. 4–6. Independent claim 1, the only claim at issue, reads as follows:

A method for obtaining three-dimensional data from devices having corresponding sides, comprising the steps of: providing a multi-pocketed tray with tray pockets arranged in rows and columns; scanning sequentially with at least one three-dimensional sensor corresponding sides of said devices in a row or column; and repeating said scanning step for all rows and columns containing sides of said devices from which data is to be obtained.

*Id.* at col. 6, ll. 51–58.

The application for the '227 patent was filed on June 24, 1992, thus establishing a critical date of June 24, 1991 for the purposes of the on-sale provision of 35 U.S.C. § 102(b). On October 31, 1995, the date the patent issued, Robotic filed suit against View, alleging that some of View's three-dimensional scanning machines infringed the patent. View filed a motion for summary judgment of invalidity. The district court granted View's motion, concluding that the claimed invention was on sale prior to the critical date, and that the patentee failed to disclose the best mode of carrying out its invention. *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 39 USPQ2d 1167, 1174, 1996 WL 383900 (C.D.Cal. Mar. 1, 1996) (order) ("*Robotic I*"). On appeal, this court reversed the district court's summary judgment of invalidity for failure to disclose the best mode, vacated its summary judgment of invalidity under the on-sale bar, and remanded the case for further fact-finding on the sole issue whether the requisite software for Robotic's full-tray scanning method was completed before the critical date. *Robotic II* at 1169. We explained that, because such software was necessary to carry out the claimed method, there was a genuine issue of material fact as to whether the claimed method was "substantially complete" before the critical date. *Id.* at 1167.

While this case was on remand, the Supreme Court held that the on-sale bar of 35 U.S.C. § 102(b) applies when the pat-

ented invention is both the subject of a commercial offer for sale and "ready for patenting" prior to the critical date. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 66–67, 119 S.Ct. 304, 142 L.Ed.2d 261, 48 USPQ2d 1641, 1646–47 (1998) (supplanting the "substantially complete" standard applied by this court). In its earlier decision, the district court found that Robotic's patented method was the subject of a commercial offer for sale prior to the critical date;[1] this factual determination was undisturbed on appeal. Accordingly, the district court proceeded to determine whether Robotic's column and row software was "ready for patenting" prior to June 24, 1991. Following a bench trial, the district court concluded that the required software was ready for patenting before the critical date. *Robotic III* at 12–13.

The court concluded that the claimed invention was ready for patenting prior to February 8, 1991, when Robotic personnel described the full-tray scanning method and presented explanatory drawings or "sketches" to Daryl Lafferty, a representative of Intel Corporation, the purchaser of Robotic's patented technology. *Id.* at 5, 12. Alternatively, the court found that the invention was ready for patenting sometime between March and April of 1991, when William Yonescu, a co-inventor, explained the invention to Daniel Briceno, a Robotic employee, in a manner sufficiently specific to enable a person skilled in the art to understand, and write the software code for, the full-tray scanning method. *Id.* at 6, 12. Applying the *Pfaff* test, the court rejected Robotic's argument that the claimed method could not be ready for patenting because one of the inventors expressed skepticism as to whether the invention would work for its intended purpose. *Id.* at 12–13 n. 4. Finally, the court

determined that the invention was reduced to practice by May 22, 1991, at which time Robotic's software contained sufficient code to enable its machines to perform the claimed "column and row" method. *Id.* at 6, 13.

Robotic timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

 In an appeal from a bench trial, we review a district court's decision for errors of law and clearly erroneous findings of fact. *Kolmes v. World Fibers Corp.*, 107 F.3d 1534, 1538, 41 USPQ2d 1829, 1832 (Fed.Cir.1997). Whether an invention was on sale within the meaning of § 102(b) is a question of law that this court reviews *de novo;* however, factual findings underlying a district court's conclusions are subject to the clearly erroneous standard of review. *Id.*

A person is entitled to a patent unless, *inter alia,* "the invention was ... *on sale* in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (1994) (emphasis added). Robotic argues that claim 1 is not invalid under the on-sale bar because the software needed to implement the claimed method, which involves the collection of three-dimensional data, was not ready for patenting prior to the critical date of June 24, 1991. Robotic contends that there was no enabling disclosure of the claimed invention prior to the critical date. Robotic also contends that the invention was not reduced to practice before the critical date. View responds that the software for the full-tray scanning method was completed before the June 24, 1991 critical date. View asserts that Robotic disclosed its invention prior to the

---

1. The district court specifically found that Robotic sold one of its LS 2000 scanning devices to Intel Corporation in March 1991, and

agreed to provide its full-tray scanning system by June 3, 1991. *Robotic I* at 1171.

critical date in a manner that was sufficiently specific to enable a person skilled in the art to practice the invention. View further contends that the software was actually reduced to practice by May 22, 1991, one month before the critical date.

■■■ We agree with View that claim 1 is invalid for violation of the on-sale bar. Under the two-part test set forth by the Supreme Court, the on-sale bar of § 102(b) applies when an invention is: (1) the subject of a commercial offer for sale before the critical date; and (2) ready for patenting before the critical date. *Pfaff*, 525 U.S. at 67, 119 S.Ct. 304, 48 USPQ2d at 1646–47. An invention may be shown to be ready for patenting in at least two ways: "by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Id.* at 67–68, 119 S.Ct. 304, 48 USPQ2d at 1647.

In its March 1, 1996 order, the district court determined that Robotic had sold its patented full-tray scanning technology to Intel Corporation in March 1991, more than one year prior to the filing date of the '227 patent. *Robotic I* at 1171–72. Because that finding was undisturbed by this court in the first appeal, *Robotic II* at 1164, 1168, the district court, on remand, properly concluded that Robotic's invention was the subject of a commercial offer for sale before the critical date. *Robotic III* at 11. Accordingly, the sole issue in this appeal is whether the district court's finding that the claimed invention was ready for patenting prior to the critical date was clearly erroneous.

We agree with View that the claimed invention, including the necessary software for implementing the full-tray scanning

method, was ready for patenting prior to the critical date. Sometime between March and April of 1991, William Yonescu, a co-inventor of the full-tray scanning method, explained the invention to Daniel Briceno of Robotic and asked him to write the software for full-tray scanning. *Robotic III* at 6. This explanation was sufficiently specific for Briceno to understand the invention and to write the software needed to implement the method. *Id.* Regardless whether or not the software was reduced to practice prior to the critical date, it is undisputed that Briceno ultimately completed the software program pursuant to Yonescu's description of the invention. In *Pfaff*, the Supreme Court, based on the facts of that case, referred to "drawings or other descriptions" as proof that an invention is complete, and hence ready for patenting. In this case, the proof was disclosure to Briceno. Accordingly, because Yonescu's disclosure was sufficiently specific to enable Briceno, a person skilled in the art, to practice the invention, the district court did not err in concluding that the invention was ready for patenting before the critical date.

Robotic argues that its invention was not ready for patenting before the critical date because the district court failed to focus on "the essence of the claimed method, *i.e.*, scanning for the purpose of collecting three-dimensional data," and that at the time of Yonescu's disclosure, "the ability to collect data did not exist because software to implement the claimed method did not exist." That argument is not persuasive. As explained above, whether or not the software needed to implement the claimed method existed at the time of the disclosure is irrelevant, provided that the disclosure of the invention was made prior to the critical date and was sufficiently specific to enable a person skilled in the art to practice the invention.[2] The district

2. In *Robotic II,* we indicated that, unless the software was completed before the critical

court specifically found that Yonescu's disclosure was made before the critical date and that "[t]his explanation was sufficient for Briceno to understand the method and write the software code to implement the method." *Id.* Because Robotic has not shown that these factual findings are clearly erroneous, we conclude that they support the court's determination that the invention was ready for patenting.

Robotic contends that Yonescu's disclosure to Briceno was not a disclosure of the claimed invention, as it demonstrated that more work was needed to determine whether the invention would work for its intended purpose. We disagree. Prior to *Pfaff*, we explained that: "[A] sale or a definite offer to sell a substantially completed invention, with reason to expect that it would work for its intended purpose upon completion, suffices to generate a statutory bar." *Robotic II* at 1167 (quoting *Micro Chem. Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538, 1545, 41 USPQ2d 1238, 1244 (Fed.Cir.1997)). The *invention* had to be substantially complete. However, in *Pfaff*, the Supreme Court supplanted the "substantially completed" standard applied by this court. *Pfaff*, 525 U.S. at 65–66, 119 S.Ct. 304, 48 USPQ2d at 1646 ("A rule that makes the timeliness of an application depend on the date when an invention is 'substantially complete' seriously undermines the interest in certainty."). The rules have thus changed. Focusing on the statutory language of § 102(b), the Court interpreted the term "invention" as *requiring a complete conception. Id.* at 66, 525 U.S. 55, 142 L.Ed.2d 261, 48 USPQ2d at 1646 ("The word 'invention' must refer to a *concept* that is complete, rather than merely one that is 'substantially complete.'" (emphasis

added)). The Court then set forth the two-part test for determining when the on-sale bar applies. Notably absent from this test is a requirement that an inventor have complete confidence that his invention work will work for its intended purpose. Such confidence often must await a reduction to practice, which is a separate basis on which an invention may be shown to be ready for patenting.

In a footnote in its principal brief, Robotic cites two post-*Pfaff* decisions that purportedly stand for the proposition that evidence of an inventor's skepticism about the "workability of an invention" is a relevant factor in determining whether an invention is ready for patenting. *See Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d 1326, 49 USPQ2d 1001 (Fed.Cir. 1998); *STX, LLC v. Brine, Inc.*, 211 F.3d 588 (Fed.Cir.2000). In both of those cases, after having reached the conclusion that the inventions at issue were ready for patenting before the critical date, the court further noted that there was evidence that the patentees had confidence that their inventions were "complete and operative" before the critical date. *Weatherchem*, 163 F.3d at 1334, 49 USPQ2d at 1007; *STX*, 211 F.3d at 591. Thus, while the court provided additional factual support for the conclusion that the inventions were ready for patenting, we did not hold that lack of skepticism regarding the "workability of an invention" was an evidentiary requirement. It will be a rare case indeed in which an inventor has no uncertainty concerning the workability of his invention before he has reduced it to practice. No such requirement will be applied here. Accordingly, the district court did not err in discounting Robotic's evidence that one

---

date, the method itself could not have been on sale. *Robotic II* at 1167. However, under *Pfaff*, actual completion of such software is not required, provided that there is a disclosure that is sufficiently specific to enable a person skilled in the art to write the necessary source code to implement the claimed method.

of the inventors expressed skepticism as to whether the invention would work for its intended purpose. *See Robotic III* at 12 n. 3 ("Stern's lack of credibility at trial aside, this is not the test under *Pfaff*. ... Accordingly, the Court disregards Stern's alleged skepticism in its decision.").

 Robotic also argues that the court erred in finding that an "internal" disclosure to a co-worker or subordinate employee "triggered the on-sale bar." Robotic contends that such a result would lead to the logical conclusion that an invention is ready for patenting at the time of conception, thereby obviating the need for a two-prong test for the on-sale bar. We disagree. First, the on-sale bar in this case was not triggered solely by an internal disclosure; rather it was triggered by a prior commercial offer for sale *and* a subsequent enabling disclosure that demonstrated that the invention was ready for patenting prior to the critical date. As we have previously explained, "[c]ompletion of the invention prior to the critical date, pursuant to an offer to sell that invention, would validate what had been theretofore an inchoate, but not yet established bar." *Robotic II* at 1168. Thus, without a commercial offer for sale, the timing of which is entirely within the control of the patentee, *Pfaff*, 525 U.S. at 67, 119 S.Ct. 304, 48 USPQ2d at 1646, an internal disclosure by itself would not satisfy the two-part test for an on-sale bar.

As for Robotic's related argument regarding conception, while it is true that in order for an "invention" to be on sale under § 102(b) there must be a complete conception, *id.* at 66, 119 S.Ct. 304, 48 USPQ2d at 1646 (defining the term "invention" in § 102(b) to mean a complete conception), the test for determining whether that invention is complete also requires proof that the invention was enabled prior to the critical date. *Id.* at 67, 119 S.Ct. 304, 48 USPQ2d at 1646–47. Thus, in this case, the district court did not reach the conclusion that Robotic's invention was ready for patenting merely because the inventor's internal disclosure proved a complete conception; rather, the court concluded that the invention was ready for patenting because the inventor's disclosure was also an enabling disclosure, *i.e.*, one that was sufficiently specific to enable his co-worker, who was a person skilled in the art, to practice the invention.

Because the factual findings of the district court are not clearly erroneous and support the conclusion that Robotic's invention was the subject of a commercial offer for sale and ready for patenting prior to the critical date of June 24, 1991, we conclude that the district court did not err in holding claim 1 of the '227 patent invalid on the ground of the on-sale bar.

We have considered the parties' remaining arguments and conclude that they are either unpersuasive or unnecessary for resolution of this appeal. The cross-appeal is moot in view of our affirmance of the district court's decision on the ground of the on-sale bar.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in holding claim 1 of the '227 patent invalid on the ground of the on-sale bar. Accordingly, we

*AFFIRM.*